

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SAIED EMAMI,

      Plaintiff,

v.                            CIVIL ACTION NO. 2:15cv34

CHARLES F. BOLDEN, JR.,
In his official capacity as
Administrator,
National Aeronautics and
Space Administration,

      Defendant.

## OPINION

This matter comes before the court on three separate motions. First, on September 29, 2016, the Defendant, Charles F. Bolden, Jr. ("the Defendant"), filed a Motion for Summary Judgment and accompanying Memorandum in Support. ECF Nos. 60, 61. On October 12, 2016, the Plaintiff, Saied Emami ("the Plaintiff"), filed a Response, ECF No. 72, and on October 17, 2016, the Defendant filed a Reply. ECF No. 78.

Second, on October 6, 2016, the Defendant filed a Motion to Exclude Plaintiff's Experts and accompanying Memorandum in Support. ECF Nos. 65, 66. On October 20, 2016, the Plaintiff filed a Response, ECF No. 79, and on October 26, 2016, the Defendant filed a Reply. ECF No. 84.

Third, on October 12, 2016, the Defendant filed a Motion in Limine and accompanying Memorandum in Support. ECF Nos. 69, 70.

The Plaintiff filed a Response on October 25, 2016, ECF No. 83, and on October 31, 2016, the Defendant filed a Reply. ECF No. 86.

On October 24, 2016, this court referred the above motions to a United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the motions. ECF No. 81.

Having conducted hearings on the above motions on October 31, 2016, ECF No. 87, the Magistrate Judge filed a Report and Recommendation ("R&R") on December 20, 2016, addressing the Motion for Summary Judgment and the Motion in Limine, ECF No. 89 (hereinafter "First R&R"), and then filed another R&R, addressing the Motion to Exclude Plaintiff's Experts, on the same day. ECF No. 90 (hereinafter "Second R&R"). In the First R&R, the Magistrate Judge recommended granting in part and denying in part the Motion for Summary Judgment, granting summary judgment on the Plaintiff's retaliation claim, and directing the parties to proceed to trial on the Plaintiff's claims of intentional discrimination. First R&R at 28-29. The Magistrate Judge also recommended denying in part the Motion in

Limine, "to exclude evidence of comparator employees, and consider further objections to comparator evidence at trial." Id. at 29. In the Second R&R, the Magistrate Judge recommended denying the Motion to Exclude Plaintiff's Experts. Second R&R at 26.

By copy of both R&Rs, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. See First R&R at 29-30; Second R&R at 26-27. On January 3, 2017, the Plaintiff filed an objection to the First R&R. ECF No. 91. On the same day, the Defendant also filed an objection to the First R&R. ECF No. 92. On January 17, 2017, the Plaintiff filed a Response to the Defendant's Objection, ECF No. 93, and then the Defendant filed a Response to the Plaintiff's Objection. ECF No. 94. Neither party objected to the Second R&R. Accordingly, these matters have been fully briefed and are ripe for review.

For the reasons discussed herein, the court **ADOPTS** Parts I, II, and III.A of the First R&R; the court **REJECTS IN PART** and **MODIFIES** Part III.B of the First R&R; and the court **ADOPTS** the Second R&R in full. Accordingly, the Motion for Summary Judgment and the Motion to Exclude Plaintiff's Experts are **DENIED**. For the reasons provided in Part III.C of this Opinion, the Defendant's Motion in Limine is also **DENIED**.

3

## I. FACTUAL AND PROCEDURAL HISTORY

This matter arises from the Plaintiff's claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), against Charles F. Bolden, Jr. ("the Defendant"), in his official capacity as Administrator of the National Aeronautics and Space Administration ("NASA").[1]

The Plaintiff is an engineer who began working for NASA in 2002. Amend. Compl. ¶ 38.[2] Through 2012, he received ratings of "Meets or Exceeds Expectations" or "Fully Successful," including "Exceeds Expectations" and "Significantly Exceeds Expectations" for certain job elements. Id. ¶¶ 43-57. In 2012, he was placed on a performance plan, to which he objected. Id. ¶¶ 93-96. The Plaintiff worked under this plan and claims that he "performed all of the tasks assigned to him to the fullest extent possible" during the performance year of 2012-13. Id. ¶ 97. On January 18, 2013, citing unacceptable performance, Rock and another supervisor placed the Plaintiff on a Performance

---

[1] These claims were initially brought, as well, against the United States, and additional state tort claims were initially brought against the Plaintiff's former supervisor at NASA, Kenneth Rock. However, both parties have been dismissed from this case. See Memorandum Order of March 30, 2016. ECF No. 33.

[2] The facts recited here come from the Amended Complaint. However, these recitations are not presumed to be true for the sake of the court's ruling on the Defendant's Motion for Summary Judgment. See infra Section II.B.

4

Improvement Plan ("PIP"), requiring the Plaintiff to submit quarterly reports on certain aspects of his work. Id. ¶¶ 119-20. The Plaintiff submitted quarterly reports on February 15, 2013, and February 28, 2013. Id. ¶ 134. On March 8, 2013, the Plaintiff also gave Rock further submissions in an effort to comply with the PIP. Id. ¶ 139.

On April 12, 2013, claiming that the Plaintiff's work under the PIP was unacceptable, Rock issued a Notice of Proposed Removal to the Plaintiff. Id. ¶¶ 25, 150. On June 21, 2013, Deputy Director Damador Ambur ("Ambur") affirmed the Plaintiff's termination. Id. ¶¶ 25, 178. The Plaintiff appealed his termination to the Merit Systems Protection Board ("MSPB"), alleging discrimination based on national origin and religion, and retaliation, under Title VII. Id. ¶ 25. The MSPB ruled against the Plaintiff on November 20, 2014, and its decision became final on December 25, 2014. Id. The Plaintiff timely filed a Complaint in this court within thirty (30) days of that finalized decision. ECF No. 1. The Plaintiff filed an Amended Complaint on April 1, 2015. ECF No. 4.

## II. LEGAL STANDARDS

### A. Review of Magistrate Judge's R&Rs

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions

5

of the R&R to which a party has specifically objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. A court should grant summary judgment, if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In essence, the nonmovant must present "evidence on which the [trier of fact] could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252.

To defeat a motion for summary judgment, the nonmoving

6

party must go beyond the facts alleged in the pleadings, and rely instead on affidavits, depositions, or other evidence to show a genuine issue for trial. See Celotex, 477 U.S. at 324; see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993) ("A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" (quoting Anderson, 477 U.S. at 249-50)). Conclusory statements, without specific evidentiary support, do not suffice, Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998), nor does "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position." Anderson, 477 U.S. at 252. Rather, "there must be evidence on which the jury could reasonably find for the plaintiff." Id.

### C. Plaintiff's Intentional Discrimination Claims

#### 1. General Standards

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To succeed on a claim of wrongful termination due to intentional discrimination under Title VII, a plaintiff must carry his burden under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Texas Dep't of Comm. Affs. v. Burdine, 450 U.S. 248, 252-53 (1981). This framework

7

requires, initially, that a plaintiff prove by a preponderance of the evidence a prima facie case for intentional discrimination. Id. at 252-53. For wrongful termination, the prima facie case requires such proof of the following: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Should a plaintiff demonstrate a prima facie case, a defendant must then "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If a defendant provides a sufficient rebuttal, a plaintiff, who "retains the burden of persuasion," must then "have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." Id. at 256. At this final stage, a plaintiff may ultimately succeed in proving discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256 (citing McDonnell Douglas, 411 U.S. at 804-805).

## 2. Standard for Comparator Evidence

"Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (citing Bryant v. Aiken Reg'l Med. Ctrs., 333 F.3d 536, 545 (4th Cir. 2003)). Should a plaintiff rely upon comparators, however, the given comparators must be "similar in all relevant respects." Id. (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) (citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989))). Haywood provides that a showing of similarity to comparators "would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" 387 F. App'x at 359 (quoting Mitchell, 964 F.2d at 583). Comparators need not be identical; rather, they must be similar in all relevant aspects, "such as conduct, performance, and qualifications." Rayyan v. Virginia Dep't of Transportation, No. 1:15cv01681, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017) (citing Haywood, 387 F. App'x at 359).

9

### D. Plaintiff's Retaliation Claim

Title VII prohibits an employer from discriminating against an employee "[1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The first clause is known as the "opposition clause," and the second is known as the "participation clause." Crawford v. Metro. Govt. of Nashville & Davidson Cty., Tn., 555 U.S. 271, 274 (2009). To succeed on a claim of retaliation brought under either clause, a plaintiff must carry his burden under the McDonnell Douglas framework. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998)). Under that framework, "a plaintiff bears the initial burden of establishing a prima facie case of retaliation." Id. (citing Laughlin, 149 F.3d at 258).

For retaliation claims, a plaintiff's prima facie case entails proof of the following elements: (1) the plaintiff "engaged in a protected activity"; (2) "the employer took a materially adverse action against" the plaintiff; and (3) a causal link "between the protected activity and the adverse action." Mascone v. Am. Physical Soc'y, Inc., 404 F. App'x 762, 765 (4th Cir. 2010). "Protected activity" is that which falls

10

under the participation or opposition clauses of Title VII's retaliation provision. Laughlin, 149 F.3d at 259.

A materially adverse action is one that "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Mascone, 404 F. App'x at 765 (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)). "This objective standard is phrased 'in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" Shetty v. Hampton Univ., No. 4:12cv158, 2014 WL 280448, at *13 (E.D. Va. Jan. 24, 2014) (Smith, J.) (quoting Burlington, 548 U.S. at 69).

Temporal proximity can show a causal link, but only if an employer's knowledge of protected activity and the adverse employment action that follows are very closely related in time. Pettis v. Nottoway Cty. Sch. Bd., 592 F. App'x 158, 161 (4th Cir. 2014). For example, a time period of three to four months is too great to establish a causal link through temporal proximity alone. See Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229, 233 (4th Cir. 2006). A ten-week time period can be sufficient to establish a prima facie case of retaliation. Silva v. Bowie State Univ., 172 F. App'x 476, 478 (4th Cir. 2006). Temporal proximity alone is not enough to show that protected activity was a "but for" cause of adverse employment action.

Staley v. Gruenberg, 575 F. App'x 153, 156 (4th Cir. 2014). But see Simard v. Unify, Inc., No. 1:15cv1649, 2016 WL 3854451, at *7 n.3 (E.D. Va. July 15, 2016). However, for purposes of the "less onerous burden" imposed by the third element of the prima facie case, adverse action occurring shortly after the protected activity is sufficient. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 250-51 (4th Cir. 2015) (explaining that causation standards for establishing pretext and establishing a prima facie case are different). Close temporal proximity is not necessary to show a causal connection, however; other relevant evidence, if sufficient, can be used to show a causal link. Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). An employer's inconsistency in its reasons for termination can establish a causal link. Mohammed v. Cent. Driving Mini Storage, Inc., 128 F. Supp. 3d 932, 951 (E.D. Va. 2015).

Should a plaintiff demonstrate a prima facie case, the burden shifts to a defendant "to rebut the presumption of retaliation by articulating a non-retaliatory reason for its action." Laughlin, 149 F.3d. at 258. If a defendant carries this burden, a plaintiff then "bears the ultimate burden of proving that [the plaintiff] has been the victim of retaliation." Id.

(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-11 (1993)).

### E. Motion to Exclude and Motion in Limine

Generally, relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. A court can exclude otherwise relevant evidence, "if its probative value is substantially outweighed" by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or unnecessarily presenting cumulative evidence. Fed. R. Evid. 403.

"A motion in limine to exclude evidence . . . should be granted only when the evidence is clearly inadmissible on all potential grounds." <u>United States v. Verges</u>, No. 1:13cr222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014); <u>see also</u> <u>Intelligent Verification Sys., LLC v. Microsoft Corp.</u>, No. 2:12cv525, 2015 WL 1518099, at *9 (E.D. Va. Mar. 31, 2015), <u>aff'd sub nom.</u> <u>Intelligent Verification Sys., LLC v. Majesco Entm't Co.</u>, 628 F. App'x 767 (Fed. Cir. 2016).

### III. ANALYSIS

### A. Plaintiff's Objection to the First R&R

The Plaintiff objects to the Magistrate Judge's recommendation in the First R&R to dismiss his retaliation claim on the basis that the Magistrate Judge improperly relied on a credibility determination. Pl.'s Obj. at 1-2. The Plaintiff argues instead that "[a] genuine issue of fact in this matter is whether Dr. Emami's assertions and discussions with the EEO Office constitute protected activity." Id. at 2. The Plaintiff also objects to the Magistrate Judge's conclusion that there is no evidence of a causal connection between the Plaintiff's protected activity and the adverse action taken against him. Id. at 2-6.

### 1. Protected Activity

To the extent that the Plaintiff alleges the Magistrate Judge did not find in his favor regarding protected activity, the Plaintiff's first part of the Objection is moot. The Magistrate Judge specifically found that "a reasonable juror might conclude [the Plaintiff] had engaged in protected activities by complaining to NASA's EEOC officials about Rock's treatment of him." First R&R at 27. Thus, the Magistrate Judge found in favor of the Plaintiff on this issue, determining that the Plaintiff has satisfied the first prong of his prima facie case by demonstrating that he engaged in protected activity. See

id. In doing so, the Magistrate Judge made no credibility determination in favor of the Defendant, having wholly resolved the first prong in the Plaintiff's favor.

However, the Plaintiff also objects that the Magistrate Judge "either overlooked or ignored" particular instances of protected activity. Pl.'s Obj. at 2. These instances of allegedly protected activity merit discussion because they share a closer temporal relationship with the alleged adverse employment actions discussed below in Part III.A.3, thus impacting the causation analysis. The Plaintiff identifies "two crucial pieces of evidence that were submitted to Rock prior to his placement on the PIP and his termination." Pl.'s Obj. at 3 (citing Pl.'s Exs. 28, 53). The first piece of evidence is Exhibit 28 to the Plaintiff's Response to the Motion for Summary Judgment, which contains an email from the Plaintiff to Nicole Smith, a human resources specialist, with a copy to Andrea Bynum, an EEO specialist, forwarding an email exchange between the Plaintiff and Rock. See Pl.'s Ex. 28, ECF No. 72-28. The second piece of evidence is an email exchange between Rock and the Plaintiff, wherein Rock denies the Plaintiff's request for the presence of an EEO representative at a performance evaluation meeting. See Pl.'s Ex. 53, ECF No. 72-53. The Plaintiff alleges that these email exchanges constitute

protected activity. Each of these email exchanges will be addressed in turn.

The content of the first email between the Plaintiff and Rock includes the following language from the Plaintiff, via an attached statement to Rock:

> However, the Laws of Equal Employment Opportunity (EEO) protecting an individual could be violated when the foregoing promotion standards/methods are used selectively to promote the interest of all employees in the branch while at the same time excluding another employee from the same standard of promotion.

Pl.'s Ex. 28, ECF No. 72-28, at 2. In that same statement, the Plaintiff also writes to Rock that "an unknown promotion standard of topsy-turvy and amorphous nature has been applied to me as compared to others, inflicting great harm to my career over past many years." Id.

The Plaintiff argues that the statement in the email demonstrates he was "clearly opposing a violation of the EEO laws, providing specific examples of employees not being treated in a similar way," and that it constitutes protected activity under Title VII. Pl.'s Obj. at 4. Moreover, the Plaintiff argues that this protected activity, falling within six months of his placement on a Performance Improvement Plan ("PIP"), is temporally proximate enough to an adverse employment action for survival of the Defendant's Motion for Summary Judgment. Id. The email to Rock is dated July 12, 2012, and that forwarded email

to Smith and Bynum is dated August 1, 2012. ECF No. 72-28, at 1. The Plaintiff was placed on his first PIP on January 18, 2013. See Compl. ¶¶ 118-22; Pl.'s Ex. No. 15, Resp. to Mot. for Summ. J., ECF No. 72-15. Based on this temporal proximity, the Plaintiff argues that "[t]he court incorrectly claims . . . that there was at least a year between Dr. Emami's complaints and his changes to his performance plan or termination." Pl.'s Obj. at 4 (citing First R&R at 28).

The second piece of evidence, Exhibit 53 to the Plaintiff's Response to the Motion for Summary Judgment, is an email exchange between the Plaintiff and Rock involving the Plaintiff's request for "two additional people to participate" in a discussion between the Plaintiff and Rock regarding performance review. See Pl.'s Ex. 53, ECF No. 72-53. In the request, which was sent on January 14, 2013, the Plaintiff specifically asks for an EEO representative to be one of these participants. Id.

Neither email was referenced in the First R&R. The first question the emails present is whether they include "protected activity" under the first prong of Emami's prima facie case. "Protected activity" is that which falls under the participation or opposition clauses of Title VII's retaliation provision. Laughlin, 149 F.3d at 259. In this case, the conduct would have to satisfy the opposition clause, under which "behavior need not

rise to the level of formal charges of discrimination."
Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.
1981) (citing Sias v. City Demonstration Agency, 588 F.2d 692,
694-96 (9th Cir. 1978)). On the contrary, "[t]he opposition
clause has been held to encompass informal protests, such as
voicing complaints to employers or using an employer's grievance
procedures." Id.

The Plaintiff's first email invokes equal employment
opportunity laws in the most general sense. See Pl.'s Ex. 28,
ECF No. 72-28, at 2. However, while there is no specific
reference to discrimination based on religion or national
origin, the Plaintiff's reference to anti-discrimination laws in
general, especially in the context of the whole statement, would
place a reasonable reader on notice that the Plaintiff was
concerned that his employer could be discriminating against him,
in violation of anti-discrimination laws. Therefore, the
statement in the email constitutes "protected activity" under
the first prong of the Plaintiff's prima facie case.[3]

---

[3] Although the Plaintiff states that Rock was aware of the
entire protected communication, see Pl.'s Obj. at 4, the exhibit
reveals that Rock was not necessarily aware of the Plaintiff's
subsequent forwarding of the email exchange to human resources
staff, as Smith and Bynum were the only recipients of the
forwarded message. See Pl.'s Ex. 28, ECF No. 72-28. Regardless,
the exhibit does show that Rock himself was aware of the
statement, which suffices for the first prong of the Plaintiff's
prima facie case.

The second email, viewed in the context of the situation, also invokes equal employment laws. The Plaintiff requested that an EEO representative participate in the Research Directorate. Pl.'s Ex. 53, ECF No. 72-53. Also noteworthy is the Plaintiff's statement at the conclusion of the email: "Further, I affirmatively waive my 'Right of Privacy' for the aforementioned event." Id. This is significant because an EEO Specialist had informed the Plaintiff that, in order to move forward in the EEO process, he needed to waive his right to anonymity. Bynum Dep., ECF No. 72-26, at 15:11-17.  This email would also place a reasonable reader on notice that the Plaintiff was concerned that his employer could be unlawfully discriminating against him.

A reasonable juror might conclude that the Plaintiff engaged in protected activity when he sent the July 12, 2012 and January 14, 2013 emails. Accordingly, the court will consider these emails for purposes of evaluating the alleged causal link between the protected activity and the adverse employment action. The Plaintiff's Objection that the aforementioned emails were instances of protected activity is **SUSTAINED**.

### 2. Materially Adverse Action

Additionally, because the temporal proximity of the materially adverse action to protected activity is an essential matter for resolving the third prong of the Plaintiff's prima

facie case—which was the basis for the Magistrate Judge's recommendation to dismiss the retaliation claim, as well as the subject of the Plaintiff's Objection—the court must determine when the Plaintiff first suffered a materially adverse action in this case. The general fulfillment of the second prong of the Plaintiff's prima facie case is not in dispute, because the parties agree that the Plaintiff was terminated. See First R&R at 27. Nevertheless, the parties do contest when the Plaintiff first suffered a materially adverse action.[4]

Some of this disagreement may stem from a misunderstanding of the controlling standard for retaliation claims. Numerous courts have incorrectly stated "adverse employment action," rather than "materially adverse action," as the controlling standard for the second prong of the retaliation prima face case.[5] See Hinton v. Virginia Union Univ., 185 F. Supp. 3d 807, 827-28 (E.D. Va. 2016), motion to certify appeal denied, No. 3:15cv569, 2016 WL 3922053 (E.D. Va. July 20, 2016). The Defendant cites "adverse employment action" as the controlling standard. Mem. in Supp., ECF No. 61, at 23. The Defendant did

_____

[4] Because Emami raises only termination and the PIP as materially adverse actions, the court will only address these actions.

[5] The Magistrate Judge ultimately applied the correct standard, see First R&R at 27, and the court MODIFIES Part III.B of the First R&R to eliminate references to the "adverse employment action" standard.

not address the PIP as an adverse action in responding to the
Plaintiff's Objection, instead focusing only on the Plaintiff's
termination.[6] The Plaintiff contends that the PIP is sufficient
for satisfying the second prong. Thus, the distinction between
"adverse employment action" and "materially adverse action" is
important here. If the PIP did not alter the terms or conditions
of employment, it could not be considered an "adverse employment
action"; however, the PIP can be considered "a materially
adverse action" even if it does not alter the terms or
conditions of employment. See Hinton, 185 F. Supp. 3d at 830-31
(citing Burlington, 548 U.S. at 64-65).

The Supreme Court has not resolved the issue of whether a
negative performance plan or placement on a PIP constitutes a
materially adverse action. Moreover, the Fourth Circuit has not
categorically held that a negative performance plan or placement
on a PIP constitutes, or fails to constitute, a materially
adverse action. The Fourth Circuit recently held that a
plaintiff failed to state a plausible discrimination claim
because the PIP in question did not permit the court to
"reasonably infer" an adverse employment action, where the
plaintiff had pled no facts showing harm. Jensen-Graf v.

---

[6] However, in a Memorandum for a previous motion, the
Defendant stated that placement on a PIP "cannot be considered
an adverse employment action." Mem. in Supp. of First Mot. for
Summ. J., ECF No. 12, at 18 n.8. This is not a correct statement
of law, as the court explains below.

Chesapeake Employers' Ins. Co., 616 F. App'x 596, 598 (4th Cir. 2015). In that case, the plaintiff's "complaints about additional requirements being placed on her as a result of the PIP amount[ed] to nothing more than 'dissatisfaction with this or that aspect of [her] work' that fail[ed] to allege an actionable adverse action." Id. (citing James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004)). An Eastern District of Virginia court has held that a "rescinded, unimplemented performance improvement plan" did not constitute a materially adverse action. Hill v. Panetta, No. 1:12cv350, 2012 WL 12871178, at *15 (E.D. Va. Oct. 4, 2012), aff'd sub nom. Hill v. Hagel, 561 F. App'x 264 (4th Cir. 2014). However, there is no authority in the Fourth Circuit that holds that a PIP cannot be a materially adverse action.

The Magistrate Judge stated that the Plaintiff "was first disciplined and eventually terminated," and that, "[i]f related to his complaints of discrimination, either of these might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination' and are thus materially adverse actions." First R&R at 27 (quoting Burlington, 548 U.S. at 68). In so finding, the Magistrate Judge implied that the PIP constituted a materially adverse action. The Defendant did not object to this finding.

The court agrees with the Magistrate Judge that the Plaintiff's being "first disciplined" could constitute a materially adverse action, satisfying the second prong of the Plaintiff's prima facie case of retaliation. Id. at 27. However, the point deserves further explanation. A negative performance review, alone, or a placement on a PIP, alone, does not constitute a materially adverse action.   Here, the Plaintiff's PIP was actually implemented, and it imposed conditions with which his failure to comply ultimately led to termination of employment. See Def.'s Reply to Pl.'s Resp., ECF No. 78, at 7-8. Indeed, on its face, the PIP imposed a requirement that the Plaintiff meet the "Needs Improvement" level in order to keep his job. PIP and Position Description, ECF No. 61-1, at 1. Further, by virtue of the Plaintiff's placement on the PIP, he became "subject to reduction in grade or removal action without being afforded another PIP." Id. These conditions, particularly in light of the requirements imposed by the PIP, could dissuade a reasonable employee from making a charge of discrimination. Resolving all factual disputes in the Plaintiff's favor, he has presented sufficient evidence for a reasonable juror to conclude that his placement on the PIP was a materially adverse action.

### 3. Causal Connection

The Plaintiff's objection also challenges the Magistrate Judge's finding that the Plaintiff's retaliation claim fails on

the third prong of his prima facie case, regarding a causal connection between the first two prongs of engagement in protected activity and a materially adverse action. Pl.'s Obj. at 3-6. On this third prong, the Magistrate Judge concluded that the Plaintiff "has not produced any evidence from which jurors could conclude the first two elements were causally connected." First R&R at 27. The Magistrate Judge further found that, "[e]ven accepting [the Plaintiff's] statements that he complained of discrimination to NASA's H.R. staff, there is no evidence that Rock knew of such complaints at the time he modified Emami's performance plan, or recommended his termination." Id. (citing Bynum Dep. 18:10-19, ECF No. 61-18). The Magistrate Judge ultimately found that "[a]lthough Emami's complaints generally preceded his termination, their temporal proximity alone is insufficient to meet Emami's burden on summary judgment." Id. at 27-28 (citing Jones v. Constellation Energy Proj. & Servs. Grp., Inc., 629 F. App'x 466, 469-70 (4th Cir. 2015)). The Magistrate Judge noted, additionally, that beyond Rock's allegedly hostile statements at least one year prior to the Plaintiff's termination, the Plaintiff "has not identified any other evidence of discriminatory animus by Rock after his alleged reporting to Bynum which might sustain his burden to show a retaliatory motive despite this passage of

time." Id. at 28 (citing Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007)).

The Plaintiff raises only two materially adverse actions for the court to consider in evaluating any causal link: his placement on the PIP and his termination of employment. In his Objection, the Plaintiff points out that the July 12, 2012 email was sent six months prior to his placement on the PIP. Pl.'s Obj. at 4. While the Plaintiff is correct that six months is a shorter time period than the year-long period discussed in the First R&R, six months is still insufficient, on its own, to infer a causal link based on temporal proximity. See supra Part II.D. However, the Plaintiff further objects that only four days elapsed between the January 14, 2013 email and his placement on the PIP. Id. This time period is short enough that a reasonable juror could infer a causal link between an instance of protected activity and a materially adverse employment action based on temporal proximity. Accordingly, the Plaintiff's Objection that the January 14, 2013 email was temporally proximate enough to his placement on the PIP to infer a causal link is SUSTAINED. The Plaintiff's Objection that the July 12, 2012 email was sufficiently temporally proximate to his placement on the PIP to infer a causal link is OVERRULED.

### 4. Non-retaliatory Reason for Materially Adverse Action

The Defendant does not specifically raise a legitimate reason for the Plaintiff's placement on the PIP, having relied on the assumption that the only adverse employment action that has taken place is the Plaintiff's ultimate termination. Def.'s Resp. to Pl.'s Obj., ECF No. 94, at 3. Still, the Defendant makes apparent that the rationale for placing the Plaintiff on the PIP is the same as the rationale for termination: allegedly poor performance. Mem. in Supp. of Summ. J., ECF No.61, at 2, 5, 9. Rock clearly communicated to the Plaintiff that he was being placed on the PIP because his "performance was failing to meet" expectations. PIP and Position Description, ECF No. 61-1, at 1. Additionally, the declarations of both Rock and Ferlemann indicate that poor performance was the reason for Emami's placement on the PIP. Rock Decl., ECF No. 61-3, ¶¶ 8-11; Ferlemann Decl., ECF No. 61-4, ¶ 7. Accordingly, the Defendant has rebutted the presumption of retaliation by articulating a non-retaliatory reason for the materially adverse action.

### 5. Pretext

Because the Defendant has met his burden of articulating a non-retaliatory reason for the materially adverse action, the burden shifts to Plaintiff to show that the reason proffered by the Defendant is pretext. See supra Part II.D. The Plaintiff argues that Rock "set Emami up to fail" by making demands with

26

which the Plaintiff could not possibly comply, such as that he must produce publishable, peer-reviewable work from data that was compromised. Pl.'s Resp., ECF No. 72, at 31. According to the Plaintiff, he was placed on the PIP after he failed to meet requirements that could not have been met. See id. Having reviewed the portion to which the Plaintiff objected de novo, the court finds that a reasonable juror could conclude that retaliation was the actual reason for the Plaintiff's termination. The court **REJECTS IN PART AND MODIFIES** Part III.B of the First R&R as discussed herein and **DENIES** the Defendant's Motion for Summary Judgment on the Plaintiff's retaliation claim.

### B. Defendant's Objection to the First R&R

The Defendant objected to the First R&R, arguing that NASA employee Troy Middleton should not be deemed a comparator and requesting the court "to exclude the comparison of Middleton's work product, performance plans, and performance evaluations, to those of the Plaintiff." Def.'s Obj., ECF No. 92, at 1.

If a plaintiff's discrimination claim hinges on comparator evidence, the validity of that plaintiff's prima facie case hinges on "whether those comparators are in fact similarly situated." Perrin v. Fennell, No. 1:10cv810, 2011 WL 837008, at *9 (E.D. Va. Mar. 2, 2011). Accordingly, such a plaintiff should show "that the comparators 'engaged in the same conduct without

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (quoting Haywood, 387 F. App'x at 359).

Haywood is often cited for its explanation of comparators. Notably, this frequently relied upon statement from Haywood is a quotation from a Sixth Circuit case, Mitchell. See Haywood, 387 F. App'x at 359 (quoting Mitchell, 964 F.2d at 583). The Sixth Circuit later clarified the standard set out in Mitchell, explaining that the comparator factors were neither inflexible nor automatically applicable. See McMillan v. Castro, 405 F.3d 405, 413-14 (6th Cir. 2005). Additionally, as the Sixth Circuit has noted, a "common misapplication" of McDonnell Douglas "is the tendency to push all of the evidence into the prima facie stage and ignore the purpose for and application of the three stages." Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 813 (6th Cir. 2011). Accordingly, courts applying McDonnell Douglas should be aware of the danger that, in the summary judgment context, "the burden-shifting analysis can obfuscate the appropriate question—whether there exists a genuine issue of material fact." Id. "[W]hether the comparators presented are similarly situated in all relevant respects" is, at least after the prima facie stage, a question for the fact finder to determine. Garrett v. Woody, No. 3:07cv286, 2008 WL 1902488, at *5 (E.D. Va. Mar. 21, 2008), report and recommendation

adopted in part, No. 3:07cv286, 2008 WL 1766760 (E.D. Va. Apr. 17, 2008).

Viewing the facts in the light most favorable to the Plaintiff, a reasonable juror could conclude that Middleton and the Plaintiff engaged in the same conduct without the sort of differentiating circumstances that would justify the differential treatment of them. The court agrees with the Magistrate Judge's statement that, for summary judgment purposes, the Plaintiff's supported identification of "at least one comparator" is sufficient. First R&R at 20-21. Having reviewed the portion to which the Defendant objected de novo, the court **ADOPTS** Part III.A of the R&R and **DENIES** the Defendant's Motion for Summary Judgment on the Plaintiff's Intentional Discrimination claim.

### C. Motion in Limine

### 1. Troy Middleton

As discussed above in Part III.B of this Opinion, having reviewed the portion to which the Defendant objected de novo, the court agrees with the Magistrate Judge's conclusion that Middleton is an appropriate comparator. Thus, the court **ADOPTS** the Magistrate Judge's recommendation in the First R&R, with regard thereto, and **DENIES** the Motion in Limine as to Troy Middleton.

## 2. Robert Baurle, Jeffrey Balla, and David Witte

The Magistrate Judge did not evaluate the admissibility of additional comparator evidence, and instead left the matter for the trial judge, noting that considerations of cumulative proof may be "best evaluated at trial." First R&R at 21, n.7. Accordingly, the additional comparator evidence related to Robert Baurle, Jeffrey Balla, and David Witte must be addressed.

The issue before the court, for purposes of the Defendant's Motion in Limine, is whether "the work product, performance plans, performance evaluations, and any testimony relevant to those documents as to NASA employees Jeff Balla, Robert Baurle, Troy Middleton, and David Witte" are clearly inadmissible. See Mot. in Limine, ECF No. 69, at 1. The Defendant moves to exclude this evidence because "these individuals are not comparators, by law, and this information should therefore not be before the jury." See Mem. in Supp. of Mot. in Limine, ECF No. 70, at 1.

There is no rule that would exclude evidence of other employees simply because the Plaintiff has not proven that they qualify as comparators under McDonnell Douglas. Indeed, "[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad per se rules." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387 (2008). As the Fourth Circuit has acknowledged, "other

employee evidence 'is neither _per_ _se_ admissible nor _per_ _se_ inadmissible.'" <u>Calobrisi v. Booz Allen Hamilton, Inc.</u>, 660 F. App'x 207, 209 (4th Cir. 2016) (quoting <u>Mendelsohn</u>, 552 U.S. at 381). Generally, the way other employees have been treated by a defendant in an employment discrimination case "'is relevant to the issue of the employer's discriminatory intent.'" <u>Id.</u> at 210 (quoting <u>Spulak v. K Mart Corp.</u>, 894 F.2d 1150, 1156 (10th Cir. 1990)).

If adverse treatment of employees that share the same protected class as the plaintiff would be relevant under <u>Mendelsohn</u> and <u>Calobrisi</u>, it follows that better treatment of employees who do not share that protected class would also be relevant. After all, "the very term 'discrimination' invokes the notion of treating two persons differently on the basis of a certain characteristic that only one possesses." <u>Laing v. Fed. Exp. Corp.</u>, 703 F.3d 713, 719 (4th Cir. 2013). Simply put, logic demands consideration of differently treated persons in a discrimination case.

The Fourth Circuit clarified "the significance of comparator evidence" when it reiterated that evidence of more favorably-treated, similarly situated employees would be "'especially relevant'" to a showing of pretext. <u>Id.</u> (quoting <u>McDonnell Douglas</u>, 411 U.S. at 804). It is worthwhile to examine the place from which this "especially relevant" language came:

31

it was used to describe would-be evidence showing "that white employees involved in acts against petitioner of comparable seriousness . . . were nevertheless retained or rehired." McDonnell Douglas, 411 U.S. at 804. Notably, the Court described such evidence as "especially relevant"; that language does not lend itself to an interpretation that such a similarly-situated status is necessary to be relevant at all.

There is nothing before the court indicating that the evidence Defendant has moved to exclude would be inadmissible. On the contrary, there are numerous factors that point to its relevance. The Plaintiff worked "as an Aerospace Engineer in the Hypersonic Air-Breathing Propulsion Branch ("Branch") within the Research Directorate ("Directorate") at the Langley Air Force Base in Hampton, Virginia." Pl.'s Resp. to Mot. in Limine, ECF 83, at 2. Baurle, Balla, and Witte are all listed as members of the same Isolator Dynamics Research Lab ("IDRL") Research Team as the Plaintiff and Middleton. Research Team, ECF No. 72-7. On this list, the names of Baurle, Witte, Middleton, and the Plaintiff are all marked with an asterisk, indicating membership in the Hypersonic Airbreathing Propulsion Branch.[7] Id. Further, Baurle's, Witte's, and Middleton's performance plans, which were

---

[7] Balla's name is marked indicating membership in the Advance Sensing & Optical Measurements Branch. Research Team, ECF No. 72-7, at 1.

filed under seal, indicate that all of them shared the job title of aerospace engineer and that all were part of the Hypersonic Airbreathing Propulsion Branch. The Defendant points out that Balla was not supervised by Rock. Reply to Resp. to Mot. in Limine, ECF No. 86, at 1. Still, during his deposition, Rock indicated that Baurle, Balla, Witte, and Middleton worked with the Plaintiff, and that he would have asked each of them, as his subordinates, how they liked working with the Plaintiff. Rock Dep., ECF No. 72-4, at 78:5-22. Balla described himself as an experimentalist, and he acknowledged that he worked in the IDRL. Balla Dep., ECF No. 51-3, at 15:15-16:12. Rock also indicated that Balla was a researcher. Rock Dep., ECF No. 72-4, at 83:7-10.

The Defendant focuses on the distinction between supervisory and reporting requirements of the Plaintiff, who was a GS-13 employee, and the proposed comparators, who held higher ranks of GS-14 and GS-15, comparing the differences between a GS-13 and a GS-14 to those "between a legal assistant and a senior attorney." ECF No. 51 at 6.[8] The Defendant also compares the differences between GS-13 and GS-15 Research Aerospace Engineers to the differences between an Assistant United States

_____

[8] The Defendant incorporated its Opposition to Plaintiff's Motion to Compel Production of Documents Relevant to Comparator Job Performance, ECF No. 51, into its Memorandum in Support of Defendant's Motion in Limine. ECF No. 70 at 2.

Attorney and the United States Attorney General. Id. at 9. These analogies strain credulity. Although the Defendant repeatedly mentions the requirement that the comparators be "similarly situated," the Defendant's argument appears to be based on the assumption that the comparators must be identical not only in order to be considered comparators for purposes of McDonnell Douglas, but also to be considered admissible evidence. If there were an employee who had the same exact GS rating, responsibilities, and supervisor as the Plaintiff, that employee would be identical, not merely similar.

Moreover, some evidence indicates that the duties and requirements of GS-13 and GS-14 researchers were not very different. Diego Capriotti, a NASA employee who had worked on a project with the Plaintiff, testified that "[a] GS-13 or 14 researcher would have the same reporting requirements." See Capriotti Dep., ECF No. 72-9, at 31:1-2. Baurle testified that he had no supervisory duties of any sort as a GS-14, nor did he have any job duties that were distinct from those of a GS-13 researcher. Baurle Dep., ECF No. 51-4, at 23:8-14. Middleton indicated that he was unsure he could tell the difference between the duties of a GS-13 aerospace engineer and a GS-14 aerospace engineer and stated that the work would be similar. Middleton Dep., ECF No. 72-40, at 70:17-71:1. The Defendant states that the allowance of evidence related to these

34

individuals "will only serve to confuse and mislead the jury, creating mini-trials within the trial and needlessly consume the time and resources of the [c]ourt." Mem. in Supp. of Mot. in Limine, ECF No. 70, at 3. The Defendant does not explain how such evidence would confuse or mislead the jury, let alone how it would be so confusing that it would substantially outweigh the probative value of the information.

The comparator issue in this case is exceedingly complex and peppered with factual disputes, and to rule on it now would require factual findings best reserved for a jury. Accordingly, at this juncture, the court **DENIES** the Defendant's Motion in Limine. If it later becomes apparent that comparator evidence would be irrelevant, cumulative, confusing, or misleading, the issue can be revisited at that time.

### D. Motion to Exclude

There were no objections to the Second R&R. The court hereby **ADOPTS** the Second R&R in full and **DENIES** the Defendant's Motion to Exclude.

### IV. CONCLUSION

The court **ADOPTS** Parts I, II, and III.A of the First R&R, **REJECTS IN PART** and **MODIFIES** Part III.B of the First R&R, and **ADOPTS** the Second R&R in full. Accordingly, the Motion for Summary Judgment, ECF No. 60, the Motion to Exclude Plaintiff's

Experts, ECF No. 65, and the Motion in Limine, ECF No. 69, are **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

March 10 , 2017

36